UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FREDDIE ALAN HENDERSON,

        Plaintiff,

vs.                    Case No. 2:07-cv-97-FtM-34DNF

OFFICER FNU BETTUS AND OFFICER FNU
LANGENBRUNNER,

        Defendants.
_____/

### OPINION AND ORDER[1]

This matter comes before the Court upon review of Defendants Bettus and Langenbrunner's Motion to Dismiss (Doc. #23, "Defendants' Motion") filed August 7, 2007. Plaintiff filed a Traverse to Defendants' Motion (Doc. #28, "Plaintiff's Response") on August 30, 2007. Upon review of the Complaint, Defendants' Motion, and Plaintiff's Reply, the Court directed the parties to provide copies of certain documents that were referenced in and alleged to have been attached to the Complaint, but were not attached to the Complaint that was filed with the Court. See February 20, 2008 Order of Court (Doc. #34). Defendants filed a Response to Order of February 20, 2008 on February 21, 2008 (Doc. #35, "Defendants' Response"). As of the date of this Order, Plaintiff has not filed a response to the Court's February 20, 2008

---

[1] This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically. However, it has been entered only to decide the matters addressed herein and is not intended for official publication or to serve as precedent.

Order and the time for doing so has since expired. This matter is now ripe for review.

### I.

Plaintiff, who is proceeding *pro se* and currently incarcerated within a Florida Department of Correction's penal facility, filed a Civil Rights Complaint Form pursuant to 42 U.S.C. § 1983 on February 20, 2007 ("Complaint," Docs. #1, #1-2, #1-3). The Complaint alleges two First Amendment claims based upon violations of Plaintiff's right to free exercise of religion and one First Amendment retaliation claim all stemming from incidents that occurred while Plaintiff was confined at Charlotte Correctional Institution. See generally Complaint.

The Complaint sets forth with specificity the following facts, which at this stage of the proceeding are assumed to be true. Plaintiff, is an observant Muslim and adheres to the tenets of the Islamic faith. Doc. #1 at 8-9. On October 9, 2006, during the month of Ramadham, Defendant Bettus, who was aware that Plaintiff was observing Ramadham, denied Plaintiff access into his cell to pray at the appropriate time. Id. Defendant Bettus told Plaintiff that he could not open Plaintiff's cell door without the assistance of another officer. Id. at 9. Immediately after denying Plaintiff access to his cell, Bettus radioed the officer's station and requested that two cell doors be opened for two other inmates. Id. When Plaintiff complained to Bettus about the fact that Bettus had

just opened the door for two other inmates, Bettus told Plaintiff to "write [him] up." Id. Approximately twenty minutes later, Bettus, with the assistance of another officer, opened Plaintiff's cell door. Id.

On October 11, 2006, at approximately 7:10 p.m., Defendant Langenbrunner refused to give Plaintiff his dietary restricted bag lunch so that he could break his Ramadham fast and pray at the appropriate time. Doc. #1-2 at 5. Defendant Langenbrunner responded by telling Plaintiff that he would be alright. Id. Plaintiff repeated his request several times, on each occasion receiving the same response. Id. When Plaintiff repeated Defendant's response to another Muslim inmate, Defendant became angry and directed Plaintiff not to disrespect him. Id. at 6. Plaintiff advised Langenbrunner of "the significance of the fast," but Defendant told Plaintiff "when he get [sic] a chance he will check on the bag lunch." Id. After approximately 35 minutes, Langenbrunner gave Plaintiff his bag lunch "but by then pray was already [over]." Id.

On November 6, 2006, an informal grievance submitted by Plaintiff against Defendant Langenbrunner was approved. Id. Three days later on November 9, 2006, Defendant Langenbrunner refused to accept Plaintiff's outgoing legal mail. Id. Langenbrunner told Plaintiff that his envelope "was too big to fit into the legal box." Id. Plaintiff claims that on November 13, 2006, another

correctional officer accepted the same envelope without incident. Id. at 7.

As relief for the claimed constitutional violations, Plaintiff seeks a declaratory judgment that Plaintiff's constitutional rights were violated. Id. at 8-9. Additionally, Plaintiff seeks nominal damages in the amount of $1.00 against each Defendant, as well as punitive damages. Id.

Defendants seek dismissal of Plaintiff's Complaint on the grounds that: 1) Plaintiff failed to exhaust his available administrative remedies; 2) Plaintiff's Complaint fails to state a cause of action; 3) Plaintiff's claims are barred by the Eleventh Amendment; and 4) Defendants are entitled to qualified immunity. See generally Defendants' Motion. Upon review of the Complaint and applicable law, the Court will grant Defendants' Motion as to Plaintiff's retaliation claim only.

## II.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

However, the Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Dura Pharms., Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965, 1968-69 (2007) (citations omitted) (abrogating Conley v. Gibson, 355 U.S. 41 (1957) and stating that Conley did not set forth the minimum standard governing a complaint's survival under a motion to dismiss, rather the case "described the breadth of opportunity to prove what an adequate complaint claims"). With respect to § 1983 cases that involve individuals entitled to assert qualified immunity, the Eleventh Circuit imposes "heightened pleading requirements." Swann v. Southern Health Partners, Inc., 388 F.3d 834, 836-838 (11th Cir. 2004)(citing Leatherman v. Tarrant County, 507 U.S. 163 (1993)); Laurie v. Ala. Court of Crim. Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001). This heightened pleading standard requires a plaintiff to allege the facts supporting a § 1983 claim with some specificity. See GJR Investments, Inc. v.

County of Escambia, 132 F.3d 1359, 1367, 1368 (11th Cir. 1998) (stressing "that the heightened pleading requirement is the law of this Circuit"). Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)). Nevertheless, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992).

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).

# III.

## A. Exhaustion

Before turning to the merits of the Complaint, the Court must address whether, as contended by Defendants, Plaintiff failed to adequately exhaust his administrative remedies with respect to each of his three claims. The Prison Litigation Reform Act (hereinafter "PLRA"), which amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, in pertinent part provides:

> (a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility **until such administrative remedies as are available are exhausted.**

42 U.S.C. § 1997e(a)(emphasis added).

The PLRA's exhaustion requirement is intended to: (1) "eliminate unwarranted federal-court interference with the administration of prisons," (2) "'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case,'" and (3) "'reduce the quantity and improve the quality of prisoner suits.'" Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006)(quoting Porter v. Nussle, 534 U.S. 506, 524-25 (2002)) (internal footnote and citations omitted). As a result of the PLRA, consideration of "[e]xhaustion is no longer left to the discretion of the district court, but is

mandatory." Woodford, 126 S. Ct. at 2382; (referencing Booth v. Churner, 532 U.S. 731, 739 (2001)). See also Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998). Additionally, the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they involve excessive force or some other wrong doing. Woodford, 126 S. Ct. at 2382; Nussle, 534 U.S. at 532; Booth, 532 U.S. at 741. Inmates, however, "are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 127 S. Ct. 910, 921 (2007). Rather, pursuant to the PLRA, failure to exhaust administrative remedies is an affirmative defense. Id.

"[T]he PLRA exhaustion requirement requires **full** and **proper** exhaustion."[2] Woodford, 126 S. Ct. at 2387 (emphasis added). Accordingly, in Johnson v. Meadows, 418 F.3d 1152 (11th Cir. 2005), the Eleventh Circuit, noting the "policies favoring exhaustion," held that the PLRA contains a procedural default component which arises where an inmate fails to avail himself in a timely fashion of an institution's administrative process. Id. at 1156, 1159, cert. denied, Johnson v. Meadows, 126 S. Ct. 2978 (2006). Thus,

---

[2] "[A] prisoner should include as much relevant information as he reasonably can in the administrative grievance process." Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000).

where an inmate's grievance is denied because of a failure to timely pursue all administrative remedies, that inmate is barred from bringing a federal action on that claim since the inmate cannot demonstrate full exhaustion of remedies. See Id. at 1158. In determining whether a plaintiff has exhausted the applicable administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted." Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).

Here, Defendants argue that according to the Complaint and the copies of the grievance forms referenced in and attached to it, Plaintiff's free exercise claims are moot because "Plaintiff's grievances regarding these two incidents were granted." Doc. #23 at 13. Defendants note that the only relief Plaintiff requested in his grievances was "that he not be retaliated against for filing such grievances." Id. In particular, Defendants argue that Plaintiff did not request any "monetary relief through the grievance process." Id. Admittedly, Plaintiff did not request monetary relief with respect to either incident in his informal grievances. Doc. #1-3 at 3-4, 7-8. Nonetheless, a plaintiff's failure to specify the nature of the remedies he seeks in a grievance is not fatal to his case. See Muhammad v. Crosby, No. 4:05cv193-WS, 2007 WL 2376050 *2 (N.D. Fla. Aug. 16, 2007) (citing

Strong v. David, 297 F.3d 646, 649 (7th Cir. 2002))(noting that "the exhaustion requirement does not require an inmate to exhaust remedies, but claims"). Moreover, Defendants do not point the Court to any provision within the Florida Administrative Code that requires an inmate to specify all forms of relief requested, or requires an inmate to appeal a grievance that has been satisfactorily resolved. See generally Doc. #23. Based upon the pleadings and applicable law, the Court declines to find that Plaintiff failed to exhaust his available administrative remedies with respect to Plaintiff's First Amendment free-exercise of religion claims stemming from the events that occurred on October 9, 2006, and October 11, 2006, respectively.

With respect to Plaintiff's retaliation claim, Defendants argue that Plaintiff "failed to show that he appealed beyond the informal grievance stage" with respect to this claim. Doc. #23 at 13. Further, Defendants argue that "Plaintiff has failed to satisfy his burden of showing proper exhaustion for the issue at hand." Id. Plaintiff does not bear the burden of demonstrating exhaustion in his Complaint. Bock, 127 S. Ct. at 921. The Court, however, may dismiss a complaint at the motion to dismiss stage where it is clear from the face of the complaint and attachments thereto that the plaintiff failed to exhaust his administrative

remedies. <u>Anderson v. Donald</u>, No. 06-16322, 2008 WL 73672 *2 (11th Cir. Jan. 8, 2008).

The Court takes judicial notice that the Department of Corrections is statutorily mandated to implement "rules relating to . . . grievance procedures which shall conform to 42 U.S.C. § 1997e." Fla. Stat . § 944.331. As such, the Department has established an inmate grievance procedure for all inmates in their custody. Fla. Admin. Code, r. 33-103.001-019. Specifically, the Department provides inmates with a three-step grievance procedure. First, an inmate must normally file either an informal grievance or formal grievance depending on the nature of his complaint. <u>Id.</u> at r. 33-103.005-.006. Informal grievances are to be filed "within a reasonable time" of the date of the incident. <u>Id.</u> at r. 33-103.011(1)(a). Inmates must file a formal grievance within fifteen days of a response to the informal grievance; or, within fifteen days of the date of the incident if the grievance is used to initiate the grievance process. <u>Id.</u> If the inmate's issue is not resolved at the institutional level, the inmate may file an appeal to the Office of the Secretary of the Department. <u>Id.</u> at r. 33-103.007.

In the matter at hand, Plaintiff asserts that on November 30, 2006, he filed an appeal of the November 28, 2006 institutional denial of his grievance to the Secretary of the Department of

Corrections. Doc. #1-3 at 1. While Plaintiff attaches to his Complaint a copy of his November 9, 2006 Informal Grievance, and a copy of the November 28, 2006 institutional denial of the grievance, Plaintiff fails to attach a copy of his November 30, 2006 appeal. See generally Doc. #1-3. In accordance with the Court's Order dated February 20, 2008, Defendants submitted a copy of the Department of Correction's record of Plaintiff's grievances with regard to the retaliation issue as an attachment to Defendants' Response. See Docs. #35-2 and #35-3. In Defendants' Response, Defendants assert that Plaintiff did not file an appeal to the Secretary of the Department of Corrections with regard to the November 28, 2006 institutional denial of his grievance. Doc. #35 at 1, ¶3. Further, Defendants maintain that the Department of Corrections "has no documents supporting Plaintiff's assertion that a further appeal [to the Secretary] was filed on November 30, 2006."[3] Id. Although, Plaintiff failed to file a response to the Court's February 20, 2008 Order, the Court must accept the allegations in Plaintiff's Complaint as true at the motion to dismiss stage of the proceedings. Christopher v. Harbury, 536 U.S. at 406; Hill v. White, 321 F.3d at 1335. Consequently, the Court must accept as true Plaintiff's averment that he filed an

---

[3] Defendants did not attach an affidavit in support of this allegation.

appeal regarding his retaliation claim with the Secretary; and, thus, is compelled to deny Defendant's Motion as to the exhaustion issue at this stage of the proceedings.

**B. Failure to State a Claim**

**1.   Free Exercise of Religion**

The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I. Inmates retain the First Amendment guarantee that no law shall proscribe the free exercise of religion. Cruz v. Beto, 405 U.S. 319, 322 (1972). An inmate's First Amendment rights, however, are not without restriction. Lawson v. Singletary, 85 F.3d 502, 509 (11th Cir. 1996). To articulate a free exercise claim, a plaintiff must first allege that he or she "is sincere in his or her asserted religious beliefs." Williams v. Secretary for the Department of Corrections, 131 Fed. Appx. 682, 685 (11th Cir. 2005) (quoting Martinelli v. Dugger, 817 F.2d 1499, 1503 (11th Cir. 1987), abrogated on other grounds Harris v. Chapmann, 97 F.3d 499 (11th Cir. 1996)). In other words, a plaintiff must be able to prove that his beliefs are religious in

nature, are sincerely held, and have been infringed. Id.; O'Lone v. Estate of Shabazz, 482 U.S. 342, 345 (1987).

Liberally construing the Complaint, Plaintiff alleges that the actions of the Defendants prohibited Plaintiff from praying and/or breaking his religious fast at the appropriate times. See Doc. #1 at 8-9. Here, accepting Plaintiff's allegations in the Complaint as true, the Court finds that Plaintiff has adequately stated a First Amendment free exercise claim arising out of Defendant Bettus' refusal to permit Plaintiff access into his cell to pray at the appointed time, and Defendant Langenbrunner's refusal to provide Plaintiff with his available bag lunch at the designated time to break his religious fast. See Beerheide v. Suthers, 286 F.3d 1179, 1185 (10th Cir. 2002); DeHart v. Horn, 227 F.3d 47, 52 (3rd Cir. 2000); Eason v. Thaler, 14 F.3d 8, 10 (5th Cir. 1994).

### 2. Retaliation

The First Amendment prohibits prison officials from retaliating against an inmate for exercising his free speech rights. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). A First Amendment retaliation claim requires: first, that a plaintiff's speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech. See Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir.

2005)(citations omitted) (surveying the law in other circuits regarding a retaliation claim as this was a case of first impression); Pittman v. Tucker, 213 Fed. Appx. 867, 870 (11th Cir. 2007) (applying Bennett factors to a retaliation claim arising in the prison context). "The plaintiffs' claim depends not on the denial of a constitutional right, but on the harassment they received for exercising their rights. 'The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right.'" Bennett, 423 F.3d at 1253 (quoting Thadeus-X v. Blatter, 175 F.3d 378, 394 n. 9 (6th Cir. 1999)). Thus, even if plaintiff sustains no actual injuries as a result of the alleged retaliatory conduct, he may recover nominal damages for a violation of his free speech rights. Al-Amin v. Smith, 511 F.3d 1317, 1334-35 (11th Cir. 2008).

Here, Plaintiff alleges that Defendant Langenbrunner refused to accept Plaintiff's outgoing legal mail in retaliation for Plaintiff filing an earlier grievance against Langenbrunner, which was approved just a few days before the incident in question. Doc. #1-2 at 7. Plaintiff alleges a specific chronology of events that supports his retaliation claim to survive a dismissal of his claim at this stage of the proceedings. Boxer X v. Harris, 437 F.3d 1107, 1112 (11th. Cir. 2006).

## C. Sovereign Immunity

It is well established that a suit against a defendant governmental officer in his official capacity is the same as a suit against the entity that employs the officer. See McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997); Kentucky v. Graham, 473 U.S. 159, 165 (1985). In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curium), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble, 779 F.2d at 1513-20.

Accordingly, in Zatler, the court found that the Secretary of the Florida Department of Corrections was immune from suit in his official capacity. Id. Here, Plaintiff affirmatively asserts that he brings this action against the Defendants Bettus and Langenbrunner in only their "individual" capacities. Doc. #1-2 at 1. Consequently, because Plaintiff is not suing the Defendants in their official capacities, the defense of sovereign immunity is inapplicable.

## D. Qualified Immunity

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit

in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730 (2002)); see also Al-Amin v. Smith, 511 F.3d 1317, 1323-24 (11th Cir. 2008). Thus, governmental officials must first prove they were acting within their discretionary authority in order to receive qualified immunity. Id. at 1234 (citing Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)). "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998)(citing Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)).

"Once the governmental officials have established that they were acting within their discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate." Id. "The Supreme Court has established a two-part test to determine the applicability of qualified immunity." Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003).

> "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope, 122 S.Ct. at 2513. "If under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential

-17-

step is to ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

Cottone, 326 F.3d at 1358.

In this case, the Defendants were acting within their discretionary authority as a correctional officers. The Court has previously determined that taking Plaintiff's allegations as true, Plaintiff has sufficiently stated a claim for deprivations of his First Amendment rights to free exercise of religion and free speech. See supra at 12-14. This Court further concludes that pre-existing law gave Defendants fair and clear warning that denying Plaintiff his approved religious diet, refusing to permit him to pray, and retaliating against him for filing a grievance concerning the conditions of his confinement were unlawful.[4] See Cruz, 405 U.S. at 319; Turner, 482 U.S. at 78; Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1997); Farrow, 320 F.3d at 1248; and Boxer X, 437 F.3d at 1112 . For this reason, given Plaintiff's version of the events, Defendants are not entitled to qualified immunity at this Rule 12(b)(6) stage of the litigation. Based upon the foregoing, Defendants' Motion to Dismiss will be denied. The Court will direct the Defendants to file an answer to Plaintiff's Complaint and permit the parties an opportunity to further develop the facts with respect to Plaintiff's First Amendment claims. Any

---

[4] The Court notes that this finding is without prejudice to Defendants' ability to revisit this matter on summary judgment, if appropriate.

other arguments not addressed herein are deemed to be without merit.

ACCORDINGLY, it is hereby **ORDERED**:

1. Defendants' Motion to Dismiss (Doc. #23) is **DENIED**.

2. Defendants shall file their Answer to Plaintiff's Complaint **within twenty (20) days** from the date of this Order.

**DONE AND ORDERED** in Fort Myers, Florida, on this 31st day of March, 2008.

MARCIA MORALES HOWARD
UNITED STATES DISTRICT JUDGE

SA: hmk
Copies: All Parties of Record